IN THE UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON S. OLMSTEAD, | ) | Case No. 1:20-CV-01603-BYP |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| WARDEN MICHAEL PHILLIPS, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.  INTRODUCTION

Petitioner, Brandon S. Olmstead ("Mr. Olmstead"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Olmstead served a 61-month term of imprisonment for: (1) two fifth-degree felony counts of trafficking in marijuana; (2) one fifth-degree felony count of aggravated trafficking in drugs; (3) one third-degree felony count of complicity (aggravated possession of drugs); (4) one third-degree felony count of complicity (aggravated trafficking in drugs); and (5) one fifth-degree felony count of possessing criminal tools.[1]

Mr. Olmstead, acting *pro se*, asserts one ground for relief in his petition with numerous sub-claims. *Id.* Respondent, Warden Michael Phillips ("Warden"), filed an answer/return of writ on November 24, 2020. (ECF No. 13).  Mr. Olmstead filed a traverse on January 21, 2021. (ECF No. 18).

This matter was referred to me on September 2, 2022, under Local Rule 72.2 to

---

[1] Mr. Olmstead's transfer from prison to post-release control does not defeat this Court's jurisdiction to hear his petition because: (1) parole satisfies the "in custody" requirement of 28 U.S.C. § 2254, *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993); and (2) the "in custody" requirement need only be met at the time the application is filed, *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001).

prepare a report and recommendation on Mr. Olmstead's petition and other case-dispositive motions. (*See* ECF non-document entry dated September 2, 2022). For the foregoing reasons, I recommend that this Court DENY Mr. Olmstead's claims. I further recommend that this Court not grant Mr. Olmstead a certificate of appealability.

## II.   RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Fifth District summarized the facts as follows:

{¶ 2} On October 26, 2016, Ashland Police Detective Brian Evans received a phone call from confidential informant (CI) Andrew Lentz. Lentz advised Evans that he could buy marihuana from appellant. Evans met with Lentz, equipped Lentz with audio and video recording devices, and provided him with $50 buy money.

{¶ 3} Lentz then placed a phone call to appellant to make arrangements. Evans recorded the call. Then, as Evans kept visual surveillance, Lentz proceeded to appellant's home as directed by appellant. Once there, Lentz gave appellant the buy money, and appellant stated he needed to go around the corner to another residence to acquire Lentz's marihuana. Lentz waited at appellant's home 10 or 15 minutes before appellant returned with one eighth ounce of marihuana. Appellant offered to smoke with Lentz, but Lentz declined and left. Lentz then returned to the Ashland Police Department and turned the marihuana and recording equipment over to Evans. The marihuana was not sent for testing, but had the appearance, consistency and odor of marihuana.

{¶ 4} On March 17, 2017, Lentz again advised Evans that he could make a marihuana purchase from appellant. The same procedures were followed for this controlled buy, and Lentz was provided $70 in buy money. Appellant told Lentz to meet him in a Save-a-Lot parking lot in Ashland. When appellant arrived, he was a passenger in a gray Chrysler Town and Country van. Appellant got out of the van and into the passenger seat of Lentz's car. Lentz handed appellant the buy money and appellant handed Lentz one quarter ounce of marihuana. Then, as directed by Evans, Lentz asked appellant if he could get "ice cream," which is a street term for methamphetamine. Appellant stated

he could get it later. Lentz then returned to the Ashland Police Department and surrendered the marihuana and recording equipment to Evans. This marihuana was also not tested, but had the appearance, consistency, and odor of marihuana. This buy as well as the October 26, 2016 buy were successfully captured on video.

{¶ 5} On March 21, 2017, CI Bobbie Burdette texted Evans to tell him appellant had reached out to her stating he had methamphetamine to sell. Evans met with Burdette, equipped her with audio and video recording devices and provided her with $50 in buy money. Burdette than made arrangements with appellant who directed her to a home on Liberty Street. Evans had received complaints from neighbors of this residence about high, short term traffic in and out of the home indicative of drug trafficking.

{¶ 6} Evans dropped Burdette off close to the home and maintained visual surveillance as Burdette walked the remaining distance. He noticed the same gray van he had observed during Lentz's second buy in the driveway. He observed a white male exiting the van and noted a woman known to him as Jennifer Campbell driving.

{¶ 7} Burdette and the white male entered the home and Evans listened as Burdette and appellant discussed the buy. Appellant produced a silver box containing the methamphetamine and a scale and weighed out half a gram. Burdette handed appellant the $50. Appellant handed Burdette the methamphetamine, but then suspecting she was serving as a CI, appellant began pushing Burdette to smoke the meth with him to prove she was not. Burdette eventually convinced appellant that she could not because she was on her way to see her children, but would be back later. Appellant took his drugs back and handed Burdette the buy money. Burdette returned to where Evans was waiting and returned the recording devices. The devices successfully captured appellant's offer to sell Burdette methamphetamine.

{¶ 8} Because Evans had observed the gray van at two different buys, as well as gathered other intelligence on the vehicle, he obtained a warrant to place a GPS tracking device on the van. The device was placed on March 23, 2017, and Evans began monitoring its movements.

{¶ 9} The same day, Evans noted the van traveling north toward Akron. This caught Evans' attention as he had gathered intelligence indicating appellant and his associates were acquiring methamphetamine from the Akron area. He watched as the van went through Summit County, into Portage County, made a short stop, and then returned to Ashland. As the van drew near an area where Evans had positioned himself on Route 250 East, he contacted Ashland Police Sergeant Craig Kiley to conduct a traffic stop of the van.

{¶ 10} When contacted by Evans, Kiley was on patrol with his canine partner Felo and his trainee Officer Kara Pearce. Kiley waited on Route 250 for the van to pass by. When it did, he pulled out behind it and a short time later initiated a traffic stop based on an equipment violation.

3

{¶ 11} Kiley found appellant behind the wheel, Jennifer Campbell in the passenger seat and Kayla Odom in the back driver's side seat. As he discussed the equipment violation with appellant, he noted appellant was breathing heavily, shaking, and would not make eye contact. The women were also acting nervous. Odom wanted to do most of the talking and kept asking if she could go urinate. Based on Evans' GPS monitoring, all three lied about where they had been. Kiley advised appellant that he was going to run Felo around the car. When he did, Felo indicated on the driver's side rear passenger door where Odom was seated.

{¶ 12} The three were removed from the vehicle while it was searched. The search turned up 4 cell phones, 2 of which belonged to appellant, but nothing more. Due to Felo's alert, Kiley and Pearce followed up with questioning. Odom then admitted she had a bag of methamphetamine in her pants and surrendered the same. All three suspects were transported to the Ashland Police Station and a search warrant was obtained for appellant's residence.

{¶ 13} At appellant's residence, officers discovered the silver box seen on the video obtained during Burdette's buy. The box contained two scales, a ziplock bag containing marihuana, a bowl for smoking marihuana, a straw, rolling papers, a butane torch, and a spoon. The bag of suspected methamphetamine surrendered by Odom was sent to the Mansfield Police Laboratory where it was confirmed to be 7.58 grams of methamphetamine.

(ECF No. 13, Exhibit 41); *State v. Olmstead*, No. 18-COA-016, 2018 WL 6822566, 2018-Ohio-5301 (5th Dist. Dec. 26, 2018).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On April 14, 2017, Mr. Olmstead was indicted in the Ashland County Court of Common Pleas on the following offenses: (1) two fifth-degree felony counts of trafficking in marijuana in violation of R.C. § 2925.03(A)(1); (2) one fifth-degree felony count of aggravated trafficking in drugs in violation of R.C. § 2925.03(A)(1); (3) one third-degree felony count of complicity (aggravated possession of drugs) in violation of R.C. §§ 2923.03(A)(2) and 2925.11(A); (4) one third-degree felony count of complicity (aggravated trafficking in drugs) in violation of R.C. §§ 2923.03(A)(2) and 2925.03(A)(2); and (5) one fifth-degree felony count of possessing criminal tools in violation of R.C. § 2923.24(A). (ECF

4

No. 13, Exhibit 1).

On May 15, 2017, Mr. Olmstead, through counsel, moved to suppress any evidence found during or resulting from the March 23, 2017 traffic stop, arguing that the search violated his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution and Article 1 of the Ohio Constitution. (ECF No. 13, Exhibit 2). In particular, Mr. Olmstead argued that the traffic stop was pretextual because he was not in violation of the license plate regulation, R.C. § 4503.21, that police testified formed the basis for the stop. *Id*.

On June 30, 2017, Mr. Olmstead filed a motion to supplement his motion to suppress. (ECF No. 13, Exhibit 5). In his supplemental brief, Mr. Olmstead argued that the police also violated his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and Article 1 of the Ohio Constitution because they exceeded the scope of the initial reason for the stop; exceeded the reasonable duration of seizure; exceeded the scope of a permissible pat down under *Terry v. Ohio*, 392 U.S. 1 (1968); and engaged in a warrantless search of Mr. Olmstead's cell phones. *Id*.

On July 20, 2017, the trial court conducted a hearing on Mr. Olmstead's motion to suppress. (ECF No. 13, Exhibit 6). Following the hearing, the trial court entered an order permitting the parties to file supplemental briefs on Mr. Olmstead's motion. *Id*. On July 28, 2017, Mr. Olmstead filed a post-hearing brief. (ECF No. 13, Exhibit 7). In his post-hearing brief, Mr. Olmstead again argued that the traffic stop was pretextual; the police unconstitutionally prolonged the stop; and the pat down of his person violated *Terry*. *Id*.

On September 5, 2017, the trial court issued an order denying Mr. Olmstead's motion to suppress, holding that "[u]pon the consideration of the totality of the circumstances surrounding the surveillance of the Defendant, the observed traffic violation associated with

the improperly mounted license plate, and limited time that transpired following the initial stop and the extremely strong and decisive drug alert by the K-9 unit, the Court finds that law enforcement had a reasonable articulable suspicion of criminal activity warranting the stop of the vehicle in question, and most certainly had probable cause to detain the defendant and investigate suspected drug-related criminal activity." (ECF No. 13, Exhibit 9).

On October 10, 2017, the State provided a bill of particulars. (ECF No., 13, Exhibit 10). On October 18, 2017, Mr. Olmstead filed three motions. First, Mr. Olmstead filed a motion to sever the counts against him pursuant to Ohio Criminal Rule 14. (ECF No. 13, Exhibit 11). Second, Mr. Olmstead filed a motion to compel the State to produce a "meaningful" bill of particulars. (ECF No. 13, Exhibit 12). Mr. Olmstead argued that the State's original bill of particulars was constitutionally defective because the State did not sufficiently identify the dates on which he was alleged to have engaged in criminal conduct. *Id*. Finally, Mr. Olmstead filed a motion to compel discovery, including redacted transcripts of alleged drug buys performed by the State's confidential informants, as well as all contracts, rules, agreements, criminal records, and other information regarding those confidential informants. (ECF No. 14, Exhibit 13).

On November 16, 2017, the trial court denied Mr. Olmstead's motions, finding that his motion to compel discovery and motion for a meaningful bill of particulars were "not well taken." (ECF No. 13, Exhibit 15). The trial court also held that Mr. Olmstead would not be unfairly prejudiced by joinder of the various counts in a single trial and denied his motion to sever. *Id*.

On November 27, 2017, Mr. Olmstead filed a motion to dismiss the indictment or, in the alternative, to exclude evidence. (ECF No. 13, Exhibit 16). Mr. Olmstead argued that

dismissal was warranted because the State violated his Sixth and Fourteenth Amendment rights by producing 446 pages of discovery less than a week before trial and more than 180 days after the State first obtained the material. *Id*. Mr. Olmstead also argued that the State had failed to turn over certain materials under *Brady v. Maryland*, 373 U.S. 83 (1963), including the identity, criminal background, and contractual information regarding two confidential informants; video of the alleged drug transactions; and redacted transcripts of those transactions. *Id*. The trial court denied Mr. Olmstead's motion to dismiss in a ruling that does not appear in the record.

The case was tried before a jury from November 28, 2017 through November 30, 2017. At the conclusion of the trial, the jury found Mr. Olmstead guilty on all counts. (ECF No. 13, Exhibit 17).

On December 11, 2017, Mr. Olmstead, through counsel, filed a motion for a verdict of acquittal under Ohio Criminal Rule 29(C), arguing that there was insufficient evidence to support the jury's verdict. (ECF No. 13, Exhibit 19). On the same day, Mr. Olmstead filed a *pro se* motion for acquittal pursuant to Ohio Criminal Rule 29(C). (ECF No. 13, Exhibit 20). Also on December 11, 2017, Mr. Olmstead, through counsel, filed a motion for a new trial under Ohio Criminal Rule 33, arguing that the trial had been tainted by irregularities; the State engaged in misconduct; and the verdict was not sustained by sufficient evidence and was contrary to law. (ECF No. 13, Exhibit 22). Finally, on December 11, 2017, Mr. Olmstead, proceeding *pro se*, filed a motion for arrest of judgment under Ohio Criminal Rule 34, arguing that the indictment was fatally defective because it allegedly did not list him as the defendant. (ECF No. 13, Exhibit 24). On December 20, 2017, the trial court issued an order denying each of Mr. Olmstead's motions. (ECF No. 13, Exhibit 25).

On January 8, 2018, the trial court sentenced Mr. Olmstead to a term of 11 months on Count One (trafficking in marijuana), a term of 11 months on Count Two (trafficking in marijuana), a term of 11 months on Count Three (aggravated trafficking in drugs), a term of nine months on Count Four (complicity (aggravated possession of drugs)), a term of 30 months on Count Five (complicity (aggravated trafficking in drugs)), and a term of 11 months on Count Six (possession of criminal tools). (ECF No. 13, Exhibit 26). The trial court ordered that Mr. Olmstead would serve his sentence for Count Two concurrently with his sentence for Count One, and would serve his sentences for Counts Three, Four, and Five consecutively to his sentence for Count One and consecutively to each other. *Id*. The trial court also ordered that Mr. Olmstead would serve his sentence for Count Six concurrently to his sentence for Counts One and Two and concurrently to his sentence for Counts Three, Four, and Five, for an aggregate sentence of 61 months. *Id*. The trial court furthered ordered that Mr. Olmstead would serve up to three years of post-release control pursuant to R.C. § 2967.28. *Id*.

**B.  Direct Appeal**

On April 2, 2018, Mr. Olmstead, through counsel, filed a motion for leave to file a delayed notice of appeal. (ECF No. 13, Exhibit 28). On May 7, 2018, the Fifth District Court of Appeals granted Mr. Olmstead's motion. (ECF No. 13, Exhibit 29).

On June 25, 2018, Mr. Olmstead, through counsel, filed his appellate brief, raising the following two assignments of error:

1.  The court erred in not merging the counts at sentencing, since they are allied offenses of similar import.

2.  The trial court erred by sentencing Brandon Olmstead to an excessive prison term of sixty one months, due to the consecutive nature of the sentences.

(ECF No. 13, Exhibit 30).

On July 5, 2018, Mr. Olmstead submitted a *pro se* letter to the Fifth Appellate District

8

requesting replacement appellate counsel. (ECF No. 13, Exhibit 32). Mr. Olmstead stated that he had requested his counsel withdraw from the case and withdraw his appellate brief because his counsel had failed to raise grounds Mr. Olmstead's trial counsel had preserved and that Mr. Olmstead believed should be raised. (ECF No. 13, Exhibit 32). Mr. Olmstead further stated that he had attempted to correspond with his appellate counsel several times but had not received a response. *Id*. On July 5, 2018, the Fifth Appellate District denied Mr. Olmstead's request to replace his appellate counsel. (ECF No. 13, Exhibit 33).

Also on July 5, 2018, Mr. Olmstead's appellate counsel filed a motion to withdraw. (ECF No. 13, Exhibit 34). Mr. Olmstead's appellate counsel stated that she had not raised the additional appellate issues Mr. Olmstead wished to raise because she "chose the most expedient issues" and was "careful not to file frivolous pleadings." *Id*. Mr. Olmstead's appellate counsel also requested that the Fifth Appellate District grant Mr. Olmstead's request to withdraw his appellate brief so that Mr. Olmstead could raise the appellate issues he wished to raise. *Id*. On July 25, 2018, the Fifth Appellate District denied the motion of Mr. Olmstead's appellate counsel to withdraw. (ECF No. 13, Exhibit 38).

On November 9, 2018, Mr. Olmstead, acting *pro se*, filed a motion to compel his appellate counsel to provide him with a copy of several of the lower court transcripts, including the transcript of the suppression hearing, the trial transcripts, and the transcripts of his sentencing hearing. (ECF No. 13, Exhibit 39). The Fifth Appellate District denied Mr. Olmstead's motion on December 17, 2018. (ECF No. 13, Exhibit 40).

On December 26, 2018, the Fifth District Appellate Court affirmed the jury's verdict. (ECF No. 13, Exhibit 41). The Fifth Appellate District Court held that the trial court properly declined to merge the counts in the indictment. The Fifth Appellate District Court also held

that Mr. Olmstead's sentence complied with the requirements of Ohio law for the imposition of consecutive sentences, was not unduly disproportionate, and did not constitute cruel and unusual punishment in violation of the Eighth Amendment.

### C.  Ohio Supreme Court

On April 23, 2019, Mr. Olmstead, proceeding *pro se*, filed a notice of appeal to the Supreme Court of Ohio. (ECF No. 13, Exhibit 46). Mr. Olmstead also filed a motion for delayed appeal, stating that he had no legal experience or legal education and was not aware of the 45-day time limit for filing a notice of appeal. (ECF No. 13, Exhibit 47). On July 10, 2019, the Ohio Supreme Court denied Mr. Olmstead's motion for a delayed appeal and dismissed the appeal. (ECF No. 13, Exhibit 49).

### D.  Rule 26(b) Application to Reopen Appeal

On March 26, 2019, Mr. Olmstead, proceeding *pro se*, filed an application in the Fifth Appellate District to reopen his appeal pursuant to Ohio Appellate Rule 26(B), arguing that he had been deprived the effective assistance of appellate counsel on his direct appeal in violation of the Sixth Amendment. (ECF No. 13, Exhibit 50). Mr. Olmstead argued that his appellate counsel was ineffective in failing to raise the following assignments of error:[2]

1.  Trial court violated Double jeopardy clause, Count 4 and count 5 should be merged together for sentencing as allied offence by O.R.C. 2945.25.

2.   Trial court abused its discretion in denial of motion to suppress.

    A.  Officer exceeded the scope of the warrant to place G.P.S. violating the defendant's Due process rights U.S. const. 4th and 14th amendment, Ohio const. Art. 1 sec. 14, Crim. R.   41.

    B.  Officer had no probable cause or reasonable suspicion to stop vehicle based on violation of 4503.21(a).

---

[2] Mr. Olmstead's grounds for relief asserted in his Rule 26(B) motion are set forth verbatim herein, including certain typographical and/or grammatical errors.

C.  Officer violated due process Const. 4th 14th rights U.S. Amend. Of the defendant, by not issuing a citation for the alleged traffic infraction.

D.  Traffic stop was pre-textual and without probable cause.

E.  Officer exceeded scope of original purpose of stop.

F.  Officer exceeded the scope of Time reasonably needed to complete mission of issuing a ticket for the traffic violation.

G.  Officer exceeded the scope of the Terry pat.

H.  Officer did a warrantless search of cell phones.

I.  (spoilage of evidence) . . . Officer tampered with evidence in violation of O.R.C.2921.12.

3.  Trial court erred in denial of Crim. R. 14 motion to sever indictment counts.

4.  Trial court abused its discretion in denial of Crim. R. 29 acquittal.

5.  Trial court abused its discretion and erred in denial of Rule 33 motion for new trial.

6.  Trial court erred in admitting video evidence the day of trial that was not properly disclosed in discovery, Due process.

7.  Trial court abused its discretion, erred in admitting witness that was not disclosed in discovery witness list, violating Crim. R. 16(I). the defendants Due process rights.

8.  Trial court erred in now allowing counsel only to be viewed (informants identity) until day of trial.

9.  Trial court erred in excluding defendant from pre trial conference violating due process rights (Rule 43(a).

10. Trial court erred in jury instruction violating defendants statutory and due process rights.

11. Trial court erred in not appointing alternate juror.- (T61-19) denying the right to fair trial.

12. Trial court erred in SENTENCING.

13. Trial counsel was ineffective depriving the defendant of a fair trial, both guaranteed by the 6th amendment, where trial counsel was deficient causing prejudice to the outcome of the trial.

A. By failure to assert due process violation.

B. Trial counsel was ineffective for Failure to assert 4th amendment violation, the right to privacy in the home, and raise crim. R. 12 Defense.

C. Trial counsel was ineffective for not moving for dismissal due to right speedy trial, O.CONST.ART I sec. 10 due process violation.

D. Trial counsel was ineffective for failure to move for Crim. R. 29 acquittal at the end of states opening statement, "statement of case"

E. Trial counsel was ineffective for Failure to impeach co defendant in trial for inconsistent statements and bias, evidence rule 616(A),613(C).

14. Trial court abused its discretion and erred in denial of timely crim. P. rule 34 Arrest of judgment motion.

15. Judicial misconduct.

16. TRIAL COURT abused its discretion, ERRED IN DENIAL OF CIVIL RULE 12 (B).

*Id*. Mr. Olmstead also included a 27 page "affidavit of truth" to the motion, which contained additional argument and citation to various legal authorities. *Id*.

On July 19, 2019, the Fifth Appellate District denied Mr. Olmstead's Rule 26(B) application to reopen. (ECF No. 13, Exhibit 55). The Fifth Appellate District first stated that Rule 26(B)(4) limited an application for reopening to 10 pages. The Fifth Appellate District noted that Mr. Olmstead had filed a 37-page document containing "16 bald and unsupported claims of ineffective assistance of appellate counsel, most with multiple sub arguments," followed by "an additional twenty-seven page 'affidavit of truth' containing additional arguments, statutes, rules, and case law." *Id*. The Fifth Appellate District stated that it "decline[d] to consider this attempt to circumvent the 10-page limit for motions to reopen." *Id*.

The Fifth Appellate District, however, "[n]ext" stated that it had "reviewed each of appellant's 16 proposed assignments of error" and concluded that each was a "bald,

unsupported statement." *Id*. Accordingly, the court held that Mr. Olmstead "has not met his burden . . . to establish a genuine issue as to whether appellant was deprived of the effective assistance of counsel on appeal." *Id*.

On August 1, 2019, Mr. Olmstead, acting *pro se*, filed a motion for reconsideration (ECF No. 13, Exhibit 56). On October 3, 2019, the Fifth Appellate District denied Mr. Olmstead's motion for reconsideration. (ECF No. 13, Exhibit 61).

On September 3, 2019, Mr. Olmstead, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 13, Exhibit 62). Mr. Olmstead raised the following propositions of law in support of jurisdiction:[3]

1. Did the appellate court abused its discretion in not applying the 2 affidavits, exhibits, citations to the record in consideration of the application to reopen violating the due process rights of the appellant?

2. Did the appellate court abuse its discretion in improperly denying the application to reopen App. R. 26(B)?

3. Was appellate counsel ineffective for abandoning trial counsels objection and arguing the incorrect count to be merged as an allied offence?

4. Was appellate counsel was ineffective for failure to obtain the transcripts?

5. Was appellate counsel ineffective for failure to raise preserved appellate issues?

6. Was appellate counsel ineffective for a conflict of interest?

*Id*.

With respect to proposition of law number five, Mr. Olmstead argued that the preserved issues "include . . . the denial of the motion to suppress, failure to sever indictment counts Crim.R. 14, Crim.R.29 Acquittal, Crim.R.33 new trial, Discovery violations-, 'admitting evidence and witnesses the day of trial' severe breaks in the chain of custody,

---

[3] Mr. Olmstead's propositions of law in his appeal to the Ohio Supreme Court are set forth verbatim herein, including certain typographical and/or grammatical errors.

denial of replacement alternative juror 'due to mental disorder[,]' failure to merge allied offenses, Insufficient evidence to sustain a conviction. Elements of crime not met." *Id*. Mr. Olmstead did not cite to any authority in support of his argument that his appellate counsel was ineffective in failing to raise those issues on appeal and did not identify any other issues he believed his appellate counsel should have raised. On October 29, 2019, the Ohio Supreme Court declined to accept jurisdiction of Mr. Olmstead's appeal. (ECF No. 13, Exhibit 65).

### E. <u>Motion to Modify Sentence</u>

On September 23, 2019, Mr. Olmstead filed a motion in the trial court to modify his sentence. (ECF No. 13, Exhibit 66). Mr. Olmstead argued that his sentence should be modified because he had been improperly sentenced for multiple allied offenses in violation of R.C. § 2941.25 and prohibitions on double jeopardy. On October 9, 2019, the trial court denied Mr. Olmstead's motion to modify his sentence. (ECF No. 13, Exhibit 67).

### F. <u>Federal Habeas Action</u>

On July 20, 2020, Mr. Olmstead, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Hill's habeas petition raises a single ground for relief:[4]

1. Denied the right to affective assistance of appellate counsel in violation of the 6th Amendment of the U.S. Constitution.

*Id*. at PageID #5.

In his supporting memorandum, Mr. Olmstead argues that his appellate counsel was ineffective in four respects:

1. Appellate counsel failed to obtain and investigate, the vital suppression hearing transcripts, jury voir dire, and all pre trial objections. Counsel could not be effective without the record or (transcripts of the suppression hearing).

---

[4] Mr. Olmstead's grounds for habeas relief asserted in his Petition are set forth verbatim herein, including certain typographical and/or grammatical errors.

2. There is a direct conflict of interest as appellate counsel does not with to follow "client objectives." This conflict of interest causes prejudice as counsel does not wish to amend her brief. For this counsel is ineffective. This prejudices the appellants cause or defense.

3. Appellate counsel was ineffective for improperly arguing the incorrect count, "criminal tools 'Count 6'" should merge with drug possession. Abandoning trial counsels objection not possession and trafficking as the proper merger counts to merge as allied offenses.

4. Appellate counsel was ineffective for failure to raise properly preserved appellate issues, meritorious claims:

   A. The introduction of audio/video evidence beyond discovery deadlines.

   B. The introduction of states witness not on witness list (discovery).

   C. The introduction of unauthenticated evidence.

   D. Count 4 & 5 merge as allied offences possession/trafficking.

   E. Officer exceeded scope of warrant to place GPS.

   F. Officer had insufficient probable cause to stop vehicle based on O.R.C. 4503.21.

   G. Officer violated due process rights of the 4th and 14th Amendment by not issueing a citation for alleged traffic stop.

   H. Officer exceeded scope of stop.

   I. Officer exceeded the scope of time to issue a ticket for violation.

   J. Officer exceeded the scope of the *Terry* pat by strip search.

   K. Warrantless search of cell phones.

   L. Officer tampered with evidence (body cam footage).

   M. Trial court erred in the denial of crim. R. 14 motion to sever indictment counts. Crimes different times, locations dates.

   N. Trial court abused its discretion of denial of crim. R. 29 acquittal.

   O. Trial court abused its discretion and erred in denial of crim. R. 33 motion for new trial.

   P. Trial court erred in excluding defendant from pre trial conference in violation of due process rights.

Q.  Trial court erred in jury instructions.

R.  Trial court erred in not appointing alternate juror denying the right to fair trial.

S.  Ineffective trial counsel for failure to assert 4th Amendment violation of the right to privacy in the home and raise a crim. R. 12 defence.

T.  Judicial misconduct.

*Id.* at PageID # 12-13.

The Warden filed an answer/return of writ on November 24, 2020. (ECF No. 13). Mr. Olmstead, acting *pro se*, filed a traverse on January 21, 2021. (ECF No. 18).

On January 3, 2022, Mr. Olmstead filed a motion for leave to supplement his complaint because he had moved places of confinement and wished to substitute the warden of his current correctional institution for the Warden. (ECF No. 27). On August 16, 2022, Mr. Olmstead filed a motion to continue ruling after his release from prison on July 22, 2022. (ECF No. 29). On August 18, 2022, Magistrate Judge Baughman denied Mr. Olmstead's motion to amend his complaint to substitute the new warden without prejudice to being reconsidered if appropriate. (ECF No. 31). Magistrate Judge Baughman also granted Mr. Olmstead's motion to continue ruling after his release, holding that the matter would persist until resolved given the continuing collateral consequences of Mr. Olmstead's conviction. (*Id.*)

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the

district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Ashland County Court of Common Pleas sentenced Mr. Olmstead, and the Court takes judicial notice that Ashland County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Olmstead's § 2254 petition. Moreover, as Mr. Olmstead's transfer from prison to post-release control does not defeat this Court's jurisdiction to hear his petition because: (1) parole satisfies the "in custody" requirement of 28 U.S.C. § 2254, *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993); and (2) the "in custody" requirement need only be met at the time the application is filed, *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001).

## B. **Exhaustion and Procedural Default**

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v.*

17

*Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. <u>Cognizable Federal Claim</u>

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18,

2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

**D. AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through"

methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous —it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination

of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's ... determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

### A.  <u>Ground One: Ineffective Assistance of Appellate Counsel</u>

Mr. Olmstead argues that he was denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments because his appellate counsel was deficient in four respects: (1) failing to obtain and investigate the transcripts of his suppression hearing, the jury voir dire, and pre-trial objections; (2) operating under a direct conflict of

interest by failing to follow Mr. Olmstead's client objectives; (3) arguing that the wrong counts should merge as allied offenses; and (4) failing to raise numerous issues that his trial counsel preserved for appeal. (ECF No. 1-1, PageID # 11-12). I recommend denying Mr. Olmstead's petition both because Mr. Olmstead procedurally defaulted a portion of the claim and because his claim fails on the merits.

### 1. Procedural Default

The Warden argues that Mr. Olmstead procedurally defaulted on his claim in two respects. First, the Warden argues that Mr. Olmstead defaulted on his claim in its entirety because the Fifth Appellate District held that he failed to comply with the page limitations governing Rule 26(B) motions. Second, the Warden argues that Mr. Olmstead procedurally defaulted on his claim that his appellate counsel was ineffective in failing to raise certain arguments because Mr. Olmstead did not include those arguments in his appeal to the Ohio Supreme Court. I consider each argument in turn.

### a. Mr. Olmstead's Failure to Comply with Page Limitation Requirements

In denying Mr. Olmstead's Rule 26(B) application, the Fifth Appellate District stated the following:

> First, App.R. 26(B)(4) states "An application for reopening and an opposing memorandum shall not exceed ten pages, exclusive of affidavits and parts of the record. * * *"
>
> Appellant here has filed a 37-page document. The first 10 pages contain 16 bald and unsupported claims of ineffective assistance of appellate counsel, most with multiple sub arguments. This portion of appellant's motion is followed by an additional twenty-seven page "affidavit of truth" containing additional arguments, statutes, rules, and case law. We decline to consider this attempt to circumvent the 10-page limit for motions to reopen.
>
> Next, we have reviewed each of appellant's 16 proposed assignments of error. As noted above, each is a bald, unsupported statement. As such, we find appellant has not met his burden under *Spivey, supra*, to establish a genuine issue as to whether appellant was deprived of the effective assistance of counsel on appeal."

(ECF No. 13, Exhibit 55).

The Warden argues that this excerpt makes clear that Fifth Appellate District denied Mr. Olmstead's application because he exceeded the applicable page limitations contained in Rule 26(B)(4). If the Warden is correct, Mr. Olmstead has procedurally defaulted on his ineffective assistance of counsel claim. "When a state court refuses to consider a habeas claim 'due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.'" *Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016) (quoting *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000)).

However, "the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent [a court] from reaching the federal claim." *Harris v. Reed*, 489 U.S. 255, 261 (1989). Instead, "the state court must have actually relied on the procedural bar as an independent basis for its disposition of the case." *Id*. at 261-62 (citing *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). Here, while the Fifth Appellate District held that Mr. Olmstead violated Rule 26(B)(4), it did not expressly state that it was denying Mr. Olmstead's application on that basis. Instead, the Fifth Appellate District stated that it "decline[d] to consider" Mr. Olmstead's attempt to circumvent the 10-page limit for applications to reopen an appeal.

I conclude that the Fifth Appellate District's opinion can be read either as (1) denying Mr. Olmstead's application in its entirety based on his violation of Rule 26(B)(4); or (2) merely refusing to consider Mr. Olmstead's supporting affidavit because that affidavit constituted an impermissible attempt to evade the applicable page limitation. The former reading is supported by the Fifth Appellate District's explicit citation to Rule 26(B)(4) and

its statement that it "decline[d] to consider" Mr. Olmstead's attempt to circumvent the applicable page limit. The latter reading is supported by the absence of clear language denying Mr. Olmstead's application under Rule 26(B)(4) and the fact that the Fifth Appellate District went on to address Mr. Olmstead's assignments of error without expressly stating that it was doing so only as an alternative holding.

As the Supreme Court has recognized, "[t]he question whether a state court's reference to state law constitutes an adequate and independent state ground for its judgment may be rendered difficult by ambiguity in the state court's opinion." *Harris*, 489 U.S. at 261. As the Supreme Court has also held, "a procedural default does not bar consideration of a federal claim on either direct or habeas review" unless the state court "'clearly and expressly' states that its judgment rests on a state procedural bar." *Id*. at 263 (quoting *Caldwell*, 472 U.S. at 327); *see also Stokes v. Scutt*, 527 F. App'x 358, 364 (6th Cir. 2013) (noting that the Supreme Court has applied a "plain statement rule" to determining whether a state court actually enforced a procedural rule on post-conviction review).

After careful consideration, I conclude that the Fifth Appellate District's opinion does not constitute a sufficiently clear and express statement that the judgment rested on a state procedural bar. I thus recommend that the Court find Mr. Olmstead did not procedurally default his claims by exceeding the page limitations contained in Rule 26(B)(4). *See Henderson v. Palmer*, 730 F.3d 554, 562 (6th Cir. 2013) (holding that procedural default did not apply where state court decision did not "show unambiguous state-court reliance on a procedural default" and Sixth Circuit could not "say that the state court actually enforced a procedural rule in denying Henderson's claim") (quotations omitted).[5]

---

[5] It is true that "[t]he plain statement rule does allow a state court to reach the merits of the federal claim in an *alternative* holding without jeopardizing a finding of procedural default." *Stokes*, 527 F. App'x at 364

### b.  Mr. Olmstead's Failure to Appeal Certain Arguments to the Ohio Supreme Court

The Warden also argues that Mr. Olmstead procedurally defaulted many of his arguments by failing to raise them before the Ohio Supreme Court. Specifically, while Mr. Olmstead argued in his Rule 26(B) motion that his appellate counsel was ineffective in failing to make numerous arguments that his trial counsel preserved, the Warden argues that Mr. Olmstead did not raise 11 of those arguments in his appeal to the Ohio Supreme Court:

1. The introduction of unauthenticated evidence;

2. The police officers exceeded the scope of warrants to place the GPS device;

3. The officers had insufficient probable cause to stop vehicle based on O.R.C. 4503.21;

4. The officers violated due process rights of the 4th and 14th Amendment by not issuing a citation for alleged traffic stop;

5. The officers exceeded the permissible scope of the stop;

6. The officers exceeded the scope of time to issue a ticket for the traffic violation;

7. The officers exceeded the permissible scope of a *Terry* pat;

8. The warrantless search of the cell phones was unconstitutional;

9. The officers tampered with evidence in connection with the body cam footage;

10. The trial court erred in excluding Mr. Olmstead from pre-trial conference in violation of due process rights; and

11. The trial court erred in its jury instructions.

(ECF No. 13, PageID # 94).

I conclude that the Warden's argument is well-taken. In his memorandum in support of jurisdiction before the Ohio Supreme Court, Mr. Olmstead argued in his fifth proposition

---

(quotations omitted, emphasis in original). Because I conclude that it is unclear whether the Fifth Appellate District addressed the merits of Mr. Olmstead's application as an alternative holding, I find that the *Stokes* rule does not apply.

of law that his appellate counsel was ineffective because appellate counsel disregarded issues that his trial counsel preserved. (ECF No, 13, Exhibit 63). Mr. Olmstead also argued that those issues "include, the denial of the motion to suppress, failure to sever indictment counts Crim.R. 14, Crim.R. 29 Acquittal, Crim.R.33 new trial, Discovery violations-, "admitting evidence and witnesses the day of trial," severe breaks in the chain of custody, denial of replacement alternate juror "due to mental disorder," failure to merge allied offenses, insufficient evidence to sustain a conviction, Elements of crime not met." *Id*. Mr. Olmstead did not identify any additional arguments that his appellate counsel should have raised.

I agree with the Warden that Mr. Olmstead failed to fairly present the 11identified arguments to the Ohio Supreme Court. For a claim to be fairly presented to a state court, the petitioner must have presented both the factual and legal bases of the claim. *See Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004) (*abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc)). Mr. Olmstead did not present the legal or factual bases for his arguments on the motion to suppress in his appeal to the Ohio Supreme Court. He did not argue to the Ohio Supreme Court, for example, that the police exceeded the permissible scope of the stop or conducted an illegal pat-down in violation of *Terry*. Mr. Olmstead has thus procedurally defaulted on all his arguments relating to the motion to suppress. And, because Mr. Olmstead did not raise the introduction of unauthenticated evidence; the alleged tampering of evidence; his exclusion from pre-trial conferences; or erroneous jury instructions at all, he has procedurally defaulted on those arguments as well.

Mr. Olmstead's procedural default can be excused if he demonstrates both cause for the default and prejudice. *See Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017). Mr. Olmstead does not identify any cause for his default, instead arguing only that he did not

commit any procedural default at all. In his traverse, Mr. Olmstead argues that failure to consider his arguments would result in a fundamental miscarriage of justice, which would excuse his procedural default if true. *See Schlup*, 513 U.S. at 324; *Lundgren*, 440 F.3d at 764. However, Mr. Olmstead does not identify any evidence establishing that he is actually innocent of the offenses for which he was convicted, as required to invoke the fundamental miscarriage of justice exception. *See id.* I therefore recommend that the Court find that Mr. Olmstead has procedurally defaulted the 11subclaims that Mr. Olmstead included in his habeas petition but failed to raise in his memorandum in support of jurisdiction to the Ohio Supreme Court. In an abundance of caution, however, I will nonetheless analyze those subclaims on the merits as well.

### 2. *Whether Appellate Counsel Was Constitutionally Ineffective*

The right to effective assistance of counsel extends through the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment.'" *Kelly*, 846 F.3d at 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466 U.S. at 687).

Mr. Olmstead raised an ineffective assistance of appellate counsel claim in his Rule 26(B) motion, and the Fifth Appellate District rejected that claim on the merits, holding that Mr. Olmstead had only made bald assertions of ineffective assistance that were insufficient to meet his burden. (ECF No. 21-2, Exhibit 46). Where the state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *See Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

As noted above, Mr. Olmstead argues that his appellate counsel was ineffective in four respects: (1) failing to obtain and investigate the transcripts of his suppression hearing,

28

the jury voir dire, and pre-trial objections; (2) operating under a direct conflict of interest by failing to follow Mr. Olmstead's client objectives; (3) arguing that the wrong counts should merge as allied offenses; and (4) failing to raise numerous issues that his trial counsel preserved for appeal. (ECF No. 1-1, PageID # 11-12). I consider each argument in turn.

### a. *Appellate Counsel's Failure to Obtain Trial Court Transcripts*

Mr. Olmstead first argues that his appellate counsel was constitutionally ineffective by failing to obtain and investigate the transcripts of the suppression hearing, jury voir dire, and pre-trial objections. In his petition, Mr. Olmstead argues that his appellate counsel "could not be effective without the record or transcripts of the suppression hearing." (ECF No. 1-1, PageID # 11). However, Mr. Olmstead does not identify any information contained in those transcripts that he believes his appellate counsel should have considered or that would have led to a different outcome.

In his traverse, Mr. Olmstead argues that his appellate counsel had a duty to conduct a reasonable investigation under *Strickland*, and that counsel would have "found several legitimate appellate issues" had she reviewed those transcripts. (ECF No. 18, PageID #1222). Again, however, Mr. Olmstead does not explain what those issues are or how the transcript of the suppression hearing would have impacted the outcome of the appeal. Mr. Olmstead's failure to explain with specificity the information contained in those transcripts that his appellate counsel should have relied on is fatal to his claim. *See Jury v. Scott*, No. 3:17CV304, 2017 WL 11707594, at *17 (N.D. Ohio Oct. 13, 2017), *report and recommendation adopted sub nom*, 2019 WL 1409376  (holding that appellate counsel was not ineffective in failing to request voir dire and preliminary hearing transcripts where petitioner did not identify anything that occurred during voir dire or preliminary hearings that he alleged was error); *Trumbo v. Bottom*, No. 13-275-ART, 2015 WL 5063766, at *13 (E.D. Ky. Aug. 26, 2015) (holding that

29

trial counsel was not constitutionally ineffective where there was no showing that petitioner had been prejudiced by alleged failure to review transcripts from first trial).

Applying the double-deferential standard under AEDPA, I conclude that the Fifth Appellate District did not err in rejecting Mr. Olmstead's claim of ineffective assistance for failure to obtain the trial court transcripts. I therefore recommend that the Court deny Mr. Olmstead's petition on this basis.

### b. Appellate Counsel's Alleged Conflict of Interest

Mr. Olmstead next argues that there was a purported conflict of interest between himself and his appellate counsel resulting from appellate counsel's refusal to raise arguments on appeal that Mr. Olmstead believes should have been raised. (ECF No. 1, Exhibit 1, PageID # 11).

It is true that a criminal defendant has a Sixth Amendment right to representation that is free from conflicts of interest. *See United States v. Cooper*, 642 F. App'x 514, 515 (6th Cir. 2016) (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). Indeed, conflict of interest claims are "generally subject to a modified version of the ineffective-assistance test" under which "prejudice is presumed if a defendant shows that an 'actual conflict of interest adversely affected his lawyer's performance.'" *Id*. (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980)).

While an actual conflict of interest can give rise to a *Strickland* claim, however, Mr. Olmstead has not established that his appellate counsel was conflicted here. Mr. Olmstead argues that his appellate counsel had a conflict of interest because his appellate counsel refused to follow his "client objectives" and refused to raise the arguments that Mr. Olmstead wanted to raise on appeal. (ECF No. 1-1, PageID # 11). It is well-settled, however, that "mere disagreement between counsel and client does not constitute an adverse interest creating a

conflict of interest." *Blevins v. White*, No. 10-07-GFVT, 2014 WL 7004976, at *24 (E.D. Ky. Dec. 10, 2014); *see also Tackett v. United States*, No. 2:13-CV-506, 2014 WL 7014653, at *9 (S.D. Ohio Dec. 10, 2014) ("A disagreement over trial tactics does not constitute a conflict that would result in incompetent representation"); *Sy Khue Xiong v. Curtin*, No. 1:11cv1202, 2014 WL 3738072, at *16 (W.D. Mich. July 29, 2014) (holding that petitioner's disagreement with counsel's strategy "did not impose a conflict of interest on his counsel"). Applying the doubly-deferential standard of review under AEDPA, Mr. Olmstead's contention that his appellate counsel was conflicted is without merit, and I recommend that the Court deny his petition on this basis.

### c.  Failure to Argue that the Correct Counts Should Merge

Mr. Olmstead next argues that his appellate counsel was constitutionally ineffective because his appellate counsel argued that the wrong count, Count Six (Criminal Tools), should merge with his drug possession count rather than arguing that Count Four (complicity (aggravated possession of drugs)) and Count Five (complicity (aggravated trafficking in drugs)) should merge.

As the Warden correctly argues, however, Mr. Olmstead's appellate counsel did argue that counts Four and Five should merge. Specifically, appellate counsel argued that Mr. Olmstead "should have been sentenced on one act for either count six (6) and count one; or on count six (6) and count four (4) and five (5); or on count six (6) and count four (4); or on count six (6) and count five (5)." (ECF No. 13, Exhibit 30). The Fifth Appellate District recognized that Mr. Olmstead's appellate counsel was arguing that the counts should merge in several ways, including "count four, complicity to aggravated possession of methamphetamine, count five, complicity to aggravated trafficking in methamphetamine, and count six possess of criminal tools." (ECF No. 13, Exhibit 41). Because Mr. Olmstead's

appellate counsel did argue for merger of counts Four and Five, Mr. Olmstead's ineffective

assistance claim is without merit, and I recommend that his petition be denied on this basis.

### d.   Appellate Counsel's Failure to Raise Preserved Arguments

Finally, Mr. Olmstead argues that his appellate counsel violated *Strickland* by failing

to raise 20 separate arguments (some of which have multiple sub-arguments) that Mr.

Olmstead contends his trial counsel preserved and would have led to a successful appeal.

To show that appellate counsel was ineffective in raising one argument over another,

"the petitioner must demonstrate that the issue not presented was clearly stronger than issues

that counsel did not present." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). And, as

noted above, to prevail on a *Strickland* claim, Mr. Olmstead must demonstrate that, but for

his appellate counsel's ineffectiveness, there is a reasonable probability that the result of the

appeal would have been different. *See Strickland*, 466 U.S. at 694.

After careful consideration, I conclude that Mr. Olmstead fails in both respects. While

Mr. Olmstead argues that his appellate counsel should have raised numerous additional

arguments, "the *Strickland* performance standard does not require an attorney to raise every

non-frivolous issue on appeal." *Caver*, 349 F.3d at 348. "Experienced advocates since time

beyond memory have emphasized the importance of winnowing out weaker arguments on

appeal and focusing on one central issue, if possible, or at most a few key issues." *Jones v.

Barnes*, 463 U.S. 745, 751-52 (1983). Indeed, "winnowing out weaker arguments on appeal

and focusing on those more likely to prevail, far from being evidence of incompetence, is the

hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). Mr.

Olmstead has not demonstrated that the issues his appellate counsel failed to raise are clearly

stronger than the issues she did raise.

Nor has Mr. Olmstead established a reasonable likelihood that the outcome of his

appeal would have been different had his appellate counsel raised these additional appellate issues. In his petition, Mr. Olmstead argues that his appellate counsel "could have raised any of these preserved arguments and prevailed on appeal." (ECF No. 1-1, PageID # 13) (emphasis omitted). However, Mr. Olmstead does not provide legal or factual support for his argument that raising these alleged errors would have changed the result on appeal. Applying the doubly-deferential standard under AEDPA, I conclude that the Fifth Appellate District did not err in concluding that Mr. Olmstead failed to meet his burden under *Strickland* through bald assertions of error. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones").

Moreover, while Mr. Olmstead elaborated on his arguments in his traverse with additional argument and case law, "even well-developed arguments raised for the first time in a reply brief come too late." *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021); *see also Albrecht v. Comm'r of Soc. Sec.*, No.1:14 CV 2116, 2015 WL 4985475, at *6 n.3 (N.D. Ohio Aug. 18, 2015) ("[a]rguments should not be raised or only developed for the first time in a Reply Brief"). That principle is fully applicable to habeas petitions and to arguments raised or elaborated on for the first time in a traverse. *See Banks v. Tibbals*, No. 1:11CV495, 2014 WL 132271, at *16 (N.D. Ohio Jan. 14, 2014) ("It is well-established that new arguments raised for the first time in a traverse, rather than the habeas petition itself, are not properly before the Court and will not be considered"); *Franklin v. Marquis*, No. 5:17-cv-2002, 2019 WL 11816553, at *20 n.12 (N.D. Ohio Oct. 31, 2019), *report and recommendation adopted*, 2021 WL 861614 ("The law is quite clear that arguments presented

for the first time in a traverse are waived."). I therefore recommend that the Court deny Mr. Olmstead's habeas petition because Mr. Olmstead has not met his burden of establishing that his appellate counsel was constitutionally ineffective under *Strickland*.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C.

§ 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. **Analysis**

Mr. Olmstead has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DENY Mr. Olmstead's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated: May 31, 2023

*s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The

> District Judge to whom the case was assigned shall make a <u>de novo</u>
> determination of those portions of the report or specified proposed findings
> or recommendations to which objection is made and may accept, reject, or
> modify, in whole or in part, the findings or recommendations made by the
> Magistrate Judge. The District Judge need conduct a new hearing only in
> such District Judge's discretion or where required by law, and may
> consider the record developed before the Magistrate Judge, making a
> determination on the basis of the record. The District Judge may also
> receive further evidence, recall witnesses or recommit the matter to the
> Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).